UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS PANG, | Case No.: 1:14-cv-01122-BAM |
| Plaintiff, | **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

## **INTRODUCTION**

Plaintiff Thomas Pang ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI") under Title XVI of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.

The Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards.  Accordingly, this Court affirms the agency's determination to deny benefits.

///

///

1

# FACTS AND PRIOR PROCEEDINGS

On November 17, 2010, Plaintiff filed an application for supplemental security income. AR 157-162.[1] Plaintiff alleged that he became disabled on November 6, 2010, due to HIV positive, rash, back pain and stress. AR 84, 157-162. Plaintiff's application was denied initially and on reconsideration. AR 84-87, 91-95. Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). ALJ Danny Pittman held a hearing on August 14, 2012, and issued an order denying benefits on September 11, 2012. AR 18-32. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-4, 17. This appeal followed.

### Hearing Testimony

The ALJ held a hearing on August 14, 2012, in Fresno, California. AR 40-64. Plaintiff appeared and testified. He was represented by attorney Gina Fazio. AR 42. Impartial Vocational Expert ("VE") Mary Ciddio also testified. AR 42, 59.

At age 53, Plaintiff was 5'7" tall and weighed about 190 pounds. AR 44. He was single and lived alone, receiving general relief. AR 44-45.

In response to questioning by the ALJ, Plaintiff testified that he had a high school education, but needed special assistance in math. He did not attend school here, and although his English vocabulary was not that good, he could write a simple note in English. AR 45-46.

In 2004 or 2005, Plaintiff received vocational training as a real estate agent. He obtained a license and last worked as an agent in 2009 or 2010. He has not done any work since November 2010. AR 46-47. Plaintiff testified that when he filed for disability he indicated that he had stopped working when he relocated. When questioned by the ALJ as to whether he would still be working if he had not relocated, Plaintiff was not certain. Plaintiff explained that he had problems at work and always got sick. AR 46-48.

When asked about his work history, Plaintiff testified that from 1997 to 1999 he worked as a car salesman and also provided some in-home support services for his mother. His mother had

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1 diabetes, so Plaintiff would check her blood sugar, give her shots, take her to the doctor and the
2 grocery store and prepare simple meals.  AR 48-49.  In 2008, Plaintiff started working for Netflix,
3 conducting quality control, such as inspecting DVDs.  AR 50.

4 Plaintiff confirmed evidence in the record that he had received unemployment.  AR 50.
5 Plaintiff also testified that he was actively looking for work when he received unemployment.  He
6 tried to look for jobs in auto sales and went on job interviews and filled out applications. If he had
7 been offered a job, he would have taken it.  AR 51.

8 Plaintiff testified that he cannot work now because he wakes up every hour due to his prostate.
9 He constantly has to go the bathroom, which interrupts his sleep and makes him tired during the day.
10 His HIV medication also makes him dizzy.  AR 51-52.

11 When asked about his daily activities, Plaintiff testified that he does simple cooking, washes
12 dishes, and does laundry, but does not really vacuum, sweep, mop or clean.  He does not attend church
13 or clubs, but likes to watch movies.  He has a pet, a Pomeranian, which he takes for short-distance
14 walks.  AR 52-53.

15 Plaintiff sees several different doctors, including for his HIV, diabetes and hypertension.  He
16 also sees a specialist for his prostate and sees Kings Winery for his arthritis.  AR 54.

17 In response to questioning from his counsel, Plaintiff testified that he takes the dog out three
18 times a day for 5-10 minutes.  AR 54-55.  At night, Plaintiff averages about 3 hours of sleep.  He also
19 sleeps on and off during the day for about 5 hours total.  In addition to sleeping and taking the dog out
20 during the day, Plaintiff will watch a movie for an hour or two or go to a doctor's appointment.  He
21 shops at the grocery store about once a week.  He also visits a friend in the apartment complex.  AR
22 55-56. Plaintiff testified that he can walk about 1/8 of a mile and has problems standing for long
23 periods of time because of the arthritis in his back.  He can stand about 5 to 15 minutes, lift about 5
24 pounds comfortably, and sit about ½ hour comfortably.  AR 57-58.

25 When asked about his medication side effects, Plaintiff testified that he also suffers from
26 memory loss, which is worse in the mornings.  AR 56-57.

27
28

When asked by his counsel about his real estate work, Plaintiff testified that it was on a referral basis and he did not work in an office. He only had one or two referrals and never had any sales. AR 58.

Following Plaintiff's testimony, the ALJ elicited testimony from the vocational expert ("VE") Mary Ciddio. AR 59. The VE testified that Plaintiff's past work was classified as quality control or electronics inspector, home attendant, and automobile salesperson. AR 59-60. The ALJ asked the VE hypothetical questions, contemplating an individual of claimant's age, education, and past jobs. AR 60. In his first hypothetical, the ALJ asked the VE to assume an individual limited to occasionally lifting and carrying 50 pounds, 25 frequently, standing and/or walking for six hours and sitting for six hours in an eight hour workday with normal breaks, no climbing ladders, ropes or scaffolds and who must avoid concentrated exposure to hazards. The VE testified that such an individual could perform some of Plaintiff's past jobs, including home attendant, quality control inspector and electronics inspector. There also would be other jobs for this individual, such as machine packager, office helper and parking lot attendant. AR 60-63.

For the second hypothetical, the ALJ asked the VE to add an additional limitation to hypothetical one of simple, routine tasks. The VE testified that this would eliminate Plaintiff's past work, but other jobs would be available, such as parking lot attendant, office helper and machine packager. AR 61-62.

For the third hypothetical, the ALJ asked the VE to assume the same hypothetical individual, limited to light exertion with the additional limitation of no climbing ladders, ropes and scaffolds and who should avoid concentrated exposure to hazards. The VE testified that this individual could perform Plaintiff's past work as an electronics or quality control inspector. Plaintiff also could perform other jobs, such as office helper and parking lot attendant. These jobs also would be available if the ALJ added a limitation to simple, routine tasks. However, if the ALJ added an additional limitation to the previous hypotheticals that this individual would be off task at least 20 percent of the time due to fatigue or effects of medication, there would be no work available. AR 62.

///

///

4

**Medical Record**

The entire medical record was reviewed by the Court. AR 246-628. The relevant medical evidence, summarized here, will be referenced below as necessary to this Court's decision.

Plaintiff was diagnosed with AIDS in October 2010. He also was diagnosed with diabetes mellitus type 2. AR 263-264.

On January 27, 2011, Plaintiff's doctor at Specialty Health Center completed a physician statement. The physician opined that Plaintiff could lift and carry without limitation, could stand 8 hours and sit without limitation. His functional level was described as "good." AR 275-276.

Plaintiff also completed a HIV Questionnaire. Plaintiff reported napping twice a day for 4 hours. Additionally, he had interrupted night rest due to an enlarge prostate and his AIDS medication. Plaintiff stated that walking, standing and showering caused him fatigue. He could groom himself, but had to rest during grooming. He also required assistance with household chores. He was able to walk 1/8 of a mile and went out of his home 2 to 3 times a week. He reported no mental problems, but had side effects from his medication, including drowsiness, dizziness, memory loss, fatigue, and trouble sleeping. AR 277-280.

On February 3, 2011, Banafshe P. Ardebili, Ph.D., a clinical psychologist, completed a consultative psychological evaluation. AR 276-296. Plaintiff reported that he began having memory and concentration problems as a result of his AIDS. On mental status examination, Plaintiff's intellectual functioning was in the borderline range. His mood was mildly depressed and anxious. His remote memory and recent memory were intact, as were his attention and concentration. On the WAIS-IV, a standardized intelligence test for adults, Plaintiff's cognitive abilities were in the borderline intellectual functioning range. AR 293-94. On the Wechsler Memory Scale-Fourth Edition, Plaintiff scored a 2 out of 75 on the Logical Memories I and a 5 out of 43 on the Visual Reproduction I. Dr. Ardebili opined that these scores were in the severely impaired range. The test was aborted, however, due to Plaintiff's "evident suboptimal effort." Dr. Ardebili indicated that once Plaintiff was informed that it was a memory functioning test, his poor performance became evident, as he alleged memory deficits as part of his claim. Dr. Ardebili noted that Plaintiff's memory scores were inconsistent with his WAIS scores and his mental status examination. Dr. Ardebili further

opined that Plaintiff appeared to be exaggerating symptoms and engaging in suboptimal effort. AR 294. On the Trail Making Test, which is designed to measure an individual's attention, concentration, fine motor speed and ability to filter out interfering stimuli, Plaintiff's results were in the unimpaired range. AR 294. On the Bender Gestalt-II, which is designed to screen for organic impairment, Plaintiff's result was in the unimpaired range. AR 294-95. Following completion of the testing, Dr. Ardebili stated that Plaintiff had "questionable credibility" and "appeared to be engaging in exaggerating of symptoms and suboptimal effort." AR 295. Dr. Ardebili diagnosed Plaintiff with mild cognitive disorder secondary to a general medical condition (AIDS) and assigned him a Global Assessment of Functioning ("GAF") of 66. Based on the assessment, Dr. Ardebili opined that Plaintiff had the ability to understand, remember and carry out short, simple instructions and had a mild inability to understand, remember and carry detailed instructions. Plaintiff also had the ability to accept instructions from supervisors and make simple work-related decisions without special supervision. He had the ability to maintain attention, concentration and persistence, with a mild inability to maintain pace. Additionally, Plaintiff had the ability to maintain day-to-day activities and interact appropriately with supervisors, coworkers and peers. AR 295-96.

On February 4, 2011, Dr. Carl E. Millner completed a consultative internal medicine evaluation. Following examination, Dr. Millner opined that Plaintiff had no restrictions in pushing, pulling, lifting, carrying, walking, standing or sitting. He also had no postural or agility restrictions, no hearing or seeing restrictions and no manipulative restrictions. AR 297-302.

On February 23, 2011, Plaintiff complained of stress due to taking a lot of medications and following the deaths of his parents. Plaintiff stated that he had difficulty surviving, let alone going to work. Plaintiff was assessed with dysthymic disorder versus MDD (situational exacerbation). He was to start Paxil. AR 354.

On February 24, 2011, Plaintiff complained of frequent urination with slow, little flow. AR 369.

On February 28, 2011, Dr. E. Murillo, a state agency physician, completed a Psychiatric Review Technique form. Dr. Murillo indicated that Plaintiff did not have a severe mental impairment. Dr. Murillo opined that Plaintiff had no restriction of activities of daily living and no difficulties in

maintaining social functioning. Although Plaintiff had mild difficulties in maintaining concentration, persistence or pace, he had no repeated episodes of decompensation. AR 306-16.

On March 25, 2011, Plaintiff sought emergency room treatment for pain and swelling in his left knee. An x-ray showed chondrocalcinosis, moderate effusion and moderate degenerative change. Plaintiff underwent an arthrocentesis of his knee showing some straw-colored fluid. He was diagnosed with arthritis. AR 318-339.

On March 28, 2011, Plaintiff complained of chronic back and neck pain for 20 years. He also complained of left knee pain. His Naproxen prescription was refilled. AR 353. X-rays of Plaintiff's cervical spine showed no evidence of fracture or subluxation and no significant degenerative change. AR 360. X-rays of his left knee showed degenerative changes with chondrocalcinosis. AR 361. X-rays of his lumbar spine showed degenerative disease with some straightening of the lumbar spine and suggested remote post traumatic changes without definite acute fracture. AR 362.

On April 12, 2011, Plaintiff complained of chronic knee pain, fatigue after starting HIV meds, and difficulty urinating. Following review of his x-rays, Plaintiff was diagnosed with degenerative joint disease in his lower back and left knee. He was referred to physical therapy. He also was diagnosed with benign prostatic hypertrophy (BPH) and referred to urology. AR 373-74.

On June 1, 2011, Plaintiff reported chronic fatigue since starting his anti-HIV meds. His HIV viral load was trending down. AR 351-52. On June 20, 2011, Plaintiff sought follow-up treatment for his HIV. Plaintiff complained that his medication was making him sleepy. He also reported that he was applying for SSI. AR 345-46.

On August 31, 2011, Plaintiff complained of depression. He requested both a referral and a note stating he needed a dog for companionship. Plaintiff's treating physician reportedly referred him to mental health and wrote a note for the landlord regarding Plaintiff's dog living with him. AR 479.

On September 6, 2011, Dr. R. Fast, a state agency physician, completed a Physical Residual Functional Capacity Assessment form. Dr. Fast opined that Plaintiff could lift and/or carry 50 pounds occasionally, 25 pounds frequently, stand and/or walk about 6 hours in an 8-hour workday and sit about 6 hours in an 8-hour workday. Plaintiff could never climb ladders, ropes or scaffolds, but did

1  not have any manipulative, visual or communicative limitations.  He must avoid unprotected heights
2  and hazards due to dizziness.  AR 387-392.

3  On September 7, 2011, Plaintiff was discharged from physical therapy after completing five
4  appointments between June 21, 2011 and September 1, 2011.  Plaintiff stated that therapy had helped
5  only a little.  Plaintiff was doing some housework and simple cooking and had an ambulation
6  tolerance of 35-45 minutes.  The physical therapist indicated that Plaintiff was able to lift 8 pounds
7  from the floor and knee level to the chest without increasing low back pain.  Plaintiff's treatment and
8  educational goals were partially met.  The therapist opined that Plaintiff "demonstrated fair to poor
9  compliance with treatment regime[n] and home exercise program."  AR 576.

10  On September 12, 2011, Dr. A. Garcia, a state agency physician, completed a Psychiatric
11  Review Technique form.  Dr. Garcia opined that Plaintiff did not have a severe mental impairment.
12  He had no restriction of activities of daily living, no difficulties in maintaining social functioning, no
13  difficulties in maintaining concentration, persistence or pace and no repeated episodes of
14  decompensation.  AR 396-406.

15  On September 26, 2011, Plaintiff reported doing well with his medication.  He did not report
16  any side effects.  Plaintiff's viral load remained undetectable, his diabetes was controlled and his BPH
17  stable.  AR 508.

18  On October 7, 2011, Plaintiff complained of chronic pain in his knees and back.  AR 478.
19  Lumbar spine x-rays, completed on October 17, 2011, showed no significant change since March 2011
20  and no acute abnormality.  AR 465.  Cervical spine x-rays showed straightening of the normal cervical
21  lordosis, which could be secondary to muscle spasm or positioning.  There were very minimal
22  degenerative changes.  AR 476.  Similarly, x-rays of the thoracic spine showed very minimal
23  degenerative changes.  AR 477.

24  On October 27, 2011, Alexander Betancourt, MA, SLMFT, completed a clinical mental health
25  assessment.  Mr. Betancourt opined that Plaintiff had significant impairments in his health, social
26  arrangement, and daily activities and that Plaintiff needed mental health treatment.   AR 485-89.

27  On November 3, 2011, Plaintiff was seen by Dr. Daniel Brooks at the Urgent Care Clinic via
28  telepsychiatry.  Plaintiff reported that his depression exacerbated in 1994 when his father died and

increased in 2004 when his mother died. Due to his current medications, Plaintiff did not wish to begin psychiatric medications. On examination, Plaintiff was cooperative, had normal motor activity, cognition, speech, and orientation. His thought processes were organized and his thought content normal. His mood was depressed, but his affective range was normal. Dr. Brooks diagnosed Plaintiff with depressive disorder NOS. Plaintiff stated that although he had been feeling depressed and nervous, he was not sure about taking any medications. He did not wish to begin any psychiatric medication at that time. AR 481-83.

On November 17, 2011, Plaintiff had a case management appointment with Luz Ramirez, a licensed clinical social worker. Plaintiff reported feeling depressed at not being able to work. He reported receiving state unemployment, but would be moving over to state disability. Plaintiff was tearful and sad that he could not afford comforts of daily living. He was open to counseling, but not medication for depression. Plaintiff did not want to see the psychiatrist again because he would need to take medication. AR 509, 550.

On December 7, 2011, Plaintiff saw Dr. Paul Simon at Community Medical Centers for follow-up. Dr. Simon noted Plaintiff had a "disagreement over disability assessment" with his treatment provider. AR 509. Plaintiff complained of side effects from his medications, including dizziness. He also complained of nocturia 5-6 times. Plaintiff indicated he previously worked processing DVDs for Netflix, but could not do the work at present due to fatigue. He could not stay awake from not sleeping well. He also reported his back pain was worse. He stopped taking Paxil as it made him feel weak/dizzy and he did not want to try another anti-depressant. Dr. Simon discussed disability with Plaintiff and opined that given Plaintiff's back pain and fatigue, Plaintiff could work part-time, light duty. AR 509-10.

In January and February 2012, Plaintiff complained of back, neck and knee pain. AR 474, 475. On February 18, 2012, x-rays of Plaintiff's right knee showed anatomic alignment, no fracture or dislocation, no effusion, no bony abnormalities and no foreign body. AR 472. X-rays of Plaintiff's left knee showed anatomic alignment, no fracture, dislocation or findings of traumatic injury, and no effusion. Plaintiff had degenerative changes with chondrocalcinosis, but no acute findings. AR 473.

On March 6, 2012, Plaintiff met with Sandra Carr, a licensed marriage and family therapist. Plaintiff's main complaint was that he was under a lot of stress, mainly financial. Plaintiff scored 39.5 on the Burns Depression Inventory, which represented severe depression. Plaintiff did not want to take medications, but asked Ms. Carr is she could help him get onto SSI. Ms. Carr told him no because he needed a doctor to validate his medical need for SSI. Plaintiff decided that because Ms. Carr was not able to help him with SSI there was no need for him to continue having any counseling. AR 510-11.

On March 12, 2012, Plaintiff sought follow-up treatment from Dr. Simon. Plaintiff complained of feeling tired and stated that he does not sleep due to nocturia, atirpia and snoring. Plaintiff also reported that he was under a lot of stress and depressed. He did not want treatment or follow-up with counseling/psych because he felt it was not helpful. Following a physical examination, Dr. Simon indicated that Plaintiff's back and joint pain was stable on ultram and his diabetes was well controlled. He was to be referred for a sleep study. AR 511-12.

On March 16 and 31, 2012, Plaintiff complained of back pain. AR 466, 470.

On April 12, 2012, Plaintiff reported mild lower urinary tract symptoms, but his urologist found Plaintiff's anatomy to be acceptable and he was to remain on tamsulosin. AR 464.

On April 28, 2012, Plaintiff complained of back and knee pain. AR 462-63.

On June 2, 2012, Plaintiff complained of lumbar pain. AR 460-61.

On June 12, 2012, Plaintiff complained of feeling dizzy because of his medication. He also complained of waking up to urinate three times at night. Plaintiff was negative for depression and his hypertension was well controlled. AR 501-02. Plaintiff's physician recommended a change in HIV medication.

On July 3, 2012, Plaintiff sought follow-up treatment for his upper back and neck pain. On examination, he had tenderness in his left and right paracervical and paravertebral muscles and trapezius muscles. His ultram was refilled. AR 457-459.

On September 29, 2012, Plaintiff sought emergency room treatment for pain in his left ankle and knee for four days. His joints had become swollen and it was painful to move his ankle or knee. On physical examination, Plaintiff's left knee was moderately swollen and he was unable to flex his

knee. Plaintiff underwent arthrocentesis of his left knee. Plaintiff was diagnosed with inflammatory arthritis to the left ankle and knee of uncertain etiology, recurrent. AR 578-79. An x-ray of Plaintiff's left ankle showed chondrocalcinosis and mild degenerative changes. AR 581.

On October 5, 2012, Plaintiff sought emergency room treatment for hip pain and back pain, along with worsening neck pain. Plaintiff reported taking tramadol for his arthritis with no relief. Following examination, Plaintiff was diagnosed with chronic neck and hip pain. He was advised to follow-up with his primary care doctor and obtain a referral to a spinal surgeon for further evaluation of his chronic spinal stenosis. Additional diagnoses were chronic lumbar spinal stenosis and chronic cervical spinal stenosis. AR 599-601. A MRI showed degeneration of the cervical spine with broad protrusion and bulging at the C4-C5 and C5-C6 levels, moderate spinal stenosis at the C5-C6 level with broad protrusion of 3mm, bilateral foraminal stenosis at the C5-C6 level and mild spinal stenosis at the C4-C5 level with a small size to the canal and small protrusion slightly asymmetric to the left of midline posteriorly. AR 618. A MRI also showed degenerative changes of the lumbosacral spine and underlying congenital changes with subsequent moderate to severe central spinal stenosis seen at the L3-4 level and moderate bilateral neural foraminal narrowing. Plaintiff also had mild narrowing of the right L2-3, mild central spinal stenosis at the L4-5 level, and moderate bilateral neural foraminal narrowing at L4-5. AR 619-620.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 21-32. More particularly, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since November 8, 2010, his application date. AR 23. Further, the ALJ identified acquired immune deficiency syndrome (AIDS), osteoarthritis, degenerative disc disease and diabetes mellitus as severe impairments. AR 23-24. Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or exceed any of the listed impairments. AR 24-25. Based on his review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to lift and carry 50 pounds occasionally and 25 pounds frequently and sit, stand and/or walk 6 hours in an 8-hour workday with normal breaks, but could not climb ladders, ropes or scaffolds and must avoid concentrated exposure

to hazards. AR 25-30. The ALJ found that Plaintiff could perform his past relevant work as a home attendant, quality control inspector or electrical inspector. AR 30-31. The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. AR 32.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

# DISCUSSION[2]

Plaintiff's only argument is that the ALJ failed to provide clear and convincing reasons for rejecting his credibility. The Commissioner counters that the ALJ properly determined that Plaintiff's statements were not credible and provided specific reasons for his determination. The Court finds that the ALJ properly assessed Plaintiff's credibility.

In deciding whether to admit a claimant's subjective complaints of pain, the ALJ must engage in a two-step analysis. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004). First, the claimant must produce objective medical evidence of his impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id.* If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only if he makes specific findings and provides clear and convincing reasons for doing so. *Id.* The ALJ must "state which testimony is not credible and what evidence suggests the complaints are not credible." *Mersman v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001) ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence."). Factors an ALJ may consider include: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the applicant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

At the first step of the analysis, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR 30. However, before proceeding to the second step, the record contains some evidence of malingering. For example, on February 3, 2011, Plaintiff underwent a consultative psychological evaluation. During testing, the Wechsler Memory Scale was aborted because once Plaintiff was informed that it was a memory functioning test, his poor performance became evident. At the conclusion of testing, Dr. Ardebili, the

---

[2] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

13

consulting psychologist, stated that Plaintiff had "questionable credibility" and "appeared to be engaging in exaggerating of symptoms and suboptimal effort." AR 295. In assessing Plaintiff's credibility, the ALJ considered Dr. Ardebili's statement that Plaintiff appeared to exaggerate his symptoms and found that it strongly suggested that Plaintiff was untruthful. AR 30. The ALJ was entitled to reject Plaintiff's testimony based on such evidence of malingering. *See Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003) (ALJ may reject claimant's testimony upon finding evidence of malingering); *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) ("ALJ gave a detailed explanation supporting" his finding that claimant was not credible, including pointing to a doctor's "observation that [claimant] showed 'poor effort'" on examination).

Even without evidence of malingering, however, the ALJ provided several clear and convincing reasons for finding Plaintiff "not fully credible." AR 30. First, the ALJ properly considered Plaintiff's persistence in trying to find a doctor to give him disability. AR 30. An ALJ may consider evidence of disability-seeking motivation when evaluating a claimant's credibility. *O'Neil v. Colvin*, No. 1:14-cv-00432-BAM, 2015 WL 5604318, at *16 (E.D. Cal. Sept. 23, 2015); *Mendez v. Astrue*, No. 1:08cv01784 DLB, 2009 WL 3011246, at *13 (E.D. Cal. Sept. 17, 2009). In this case, the ALJ noted record evidence of Plaintiff seeking an opinion from Dr. Simon that he was disabled after a disagreement with his treating doctor regarding a disability assessment. AR 26, 509-10. The ALJ also noted record evidence of Plaintiff seeking assistance from his therapist, Ms. Carr, in obtaining SSI. When Ms. Carr told him no, Plaintiff indicated that if she could not help him get on SSI, there was no need for any counseling. AR 27, 510-11. The ALJ found Plaintiff's statement to Ms. Carr indicative of "no real need for treatment" and indicated it shed "doubt on the severity of his physical impairments as well given his consistent requests and 'shopping' for doctors to put him on disability." AR 27.

Second, the ALJ considered that Plaintiff collected unemployment benefits during his purported period of disability. AR 30, 50, 171-72, 551. Additionally, the ALJ found that Plaintiff's testimony that he would have accepted work if it had been offered undercut his testimony that he could not work. AR 30, 51. Receipt of unemployment benefits, coupled with record evidence that the claimant held himself out as available for work, can undermine a claimant's alleged inability to work

1  full time. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161-1162 (9th Cir. 2008) ("receipt
2  of unemployment benefits can undermine a claimant's alleged inability to work fulltime").

3        Third, the ALJ discounted Plaintiff's testimony that he could only stand for 15 minutes as
4  inconsistent with Plaintiff's performance at physical therapy where he walked for 45 minutes. AR 30.
5  According to the record, Plaintiff testified that he could walk about 1/8 of a mile and stand 5 to 15
6  minutes. AR 57-58. In contrast, Plaintiff's physical therapy records indicated he could walk for 35-45
7  minutes—this despite his fair to poor compliance with treatment and his home exercise program. AR
8  576. An ALJ is entitled to consider whether there is a lack of medical evidence to corroborate a
9  claimant's alleged symptoms so long as it is not the only reason for discounting a claimant's
10 credibility. *Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005); *Batson*, 359 F.3d at 1196-97
11 (ALJ properly relied on objective medical evidence and medical opinions in determining credibility).

12       Fourth, the ALJ discounted Plaintiff's credibility because he performed a wide range of
13 activities inconsistent with total disability. AR 30. An ALJ may properly consider a plaintiff's daily
14 activities when discounting a plaintiff's subjective testimony. *Valentine v. Comm'r Soc. Sec. Admin.*,
15 574 F.3d 685, 693 (9th Cir. 2009) (evidence that plaintiff "exercised and undertook several projects
16 after he retired" suggested that his "later claims about the severity of his limitations were
17 exaggerated"); *Mulligan v. Colvin*, No. 1:14-cv-1023-BAM, 2015 WL 5687661, at * 5 (E.D. Cal.
18 Sept. 25, 2015) (discounting credibility where plaintiff maintained his own personal hygiene,
19 prepared meals, performed light household chores and yard work once or twice a week, and shopped a
20 couple times a month). "Even where those activities suggest some difficulty functioning, they may be
21 grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally
22 debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012). Here, the ALJ found
23 that Plaintiff "cooks, cleans, shops, drives, cares for his dog, walks his dog, does dishes, runs errands,
24 rents movies, pays bills, does laundry and spends time with others." AR 30, 52-56, 197-200.

25       As a final matter, the ALJ also attempted to discount Plaintiff's credibility based on his
26 testimony that he could not work because of side effects from his medication as inconsistent with his
27 request for disability from Dr. Simon because he was weak and unable to stand for any length of time.
28 AR 30. However, in this instance, Plaintiff testified that he could not work because of fatigue and his

medication side effects.  AR 51-52.  Consistent with his testimony, and contrary to the ALJ's findings, Plaintiff reportedly told Dr. Simon that he could not work "due to fatigue" and back pain.  AR 509.  Although this reasoning may have been in error, because there is substantial evidence to support the ALJ's other conclusions, the ALJ's credibility determination will not be disturbed.  *See, e.g., Batson*, 359 F.3d at 1197 (upholding ALJ's credibility determination even though one reason may have been in error).

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security, and against Plaintiff Thomas Pang.

IT IS SO ORDERED.

Dated:   **December 29, 2015**            /s/ *Barbara A. McAuliffe*
                                                       UNITED STATES MAGISTRATE JUDGE